### McCORMICK v. McDONALD et al.

(Circuit Court, S. D. New York. July 3, 1901.)

EQUITY JURISDICTION—SUIT TO DECLARE CONTRACT—IMPOSSIBILITY OF GRANTING SUBSTANTIVE RELIEF.

A court of equity has no jurisdiction to decree that a complainant is entitled, under an agreement with defendant, to a certain per cent. of the net profits of a contract which is being executed by defendant, and to declare a trust therein in his favor, where the work under the contract has not been completed, and it is not alleged that defendant has been guilty of any fraud or mismanagement or is insolvent; such court having no power to entertain a suit to determine the fact whether or not the agreement to share profits was made, which is cognizable at law, nor to declare the status of the parties with reference to the contract, where no ground is shown which would warrant the granting of any substantive relief.

In Equity. On final hearing.

Edward B. Hill, for complainant.

E. Parmalee Prentice and Charles P. Howland, for defendants.

COXE, District Judge. This is an action in equity to establish the right of the complainant to participate, to the extent of certain commissions alleged to be due him, in the profits growing out of the construction of Jerome Park reservoir by the defendants. McDonald, who is the only defendant against whom a personal judg-

ment is demanded, entered into a contract with the board of aque-
duct commissioners of New York to build for the city the so-called
Jerome Park reservoir and arranged with the Drake & Stratton
Company to do the work. In connection with the work the Drake
& Stratton Company purchased a tract of land containing about
225 acres, bordering on Long Island Sound, for $465,000; $80,000
of this sum was paid down and a purchase-money mortgage was
given for the balance. The title to the property was taken in the
name of Pierre W. Briggs who held it for the purchasers. The ob-
ject of the purchase was to enhance the value of the land, some of
which was under water, by dumping there the earth excavated from
the reservoir. The Drake & Stratton Company proceeded with the
construction until April, 1897, when Mr. Drake, its president, died
and it was unwilling to continue the work. In these circumstan-
ces the complainant asserts that McDonald applied to him for
assistance and it was agreed between them that if the complain-
ant succeeded in securing some one who would undertake to com-
plete the construction under the Drake & Stratton contract, Mc-
Donald would give him a reasonable share of the profits of the enter-
prise. The bill alleges that through the efforts of the complainant
the defendant Onderdonk was induced to undertake the perform-
ance of the contract to construct the reservoir for a compensation of
42½ per cent. of the net profits and thereupon McDonald agreed
that the complainant's interest in the contract should be 17½ per
cent. of the net profits. The bill alleges further that it was agreed
that complainant should pay one-half of the $100,000 invested by
the Drake & Stratton Company in the said 225 acres of land and
one-half of such other moneys as might be necessary to insure the
ownership and maintenance of said land and that the profits aris-
ing from the said land should be equally divided between McDon-
ald and complainant. The complainant has at all times been ready
to carry out the agreement as to the said lands. The bill alleges
further that McDonald and Onderdonk have formed a partnership,
which is financed by the defendant Mills, and are engaged in carry-
ing out the contract for the completion of the reservoir and for the
purchase and maintenance of the land, and have received and are
receiving various sums pursuant to the provisions of the said con-
tract; that the defendant has refused to recognize any claim on the
part of the complainant to profits arising from the contract or the
said land.

The relief demanded is: First. That it may be decreed that the
complainant has an interest of 17½ per cent. in the profits arising
from the aqueduct contract and one-half the net profits arising from
the purchase, maintenance and sale of said lands. Second. That
McDonald and Onderdonk be declared trustees of the complainant
to the amount of 17½ per cent. of the said profits "as and when
the same are or shall be realized and that they further account for
and pay over to him 17½ per cent. of any profits heretofore realized
from said contract." Third. That Mills and McDonald be declared
to be trustees for the complainant of one-half of the profits arising
from the management of the said lands and that they account for

and pay over to the complainant one-half of the profits which they have derived or may hereafter derive therefrom. .

The answer of the defendant McDonald denies that he ever made or entered into any agreement with the complainant whereby he was to have a share in the profits of either of said enterprises. The other defendants deny all knowledge of any agreement giving the complainant a share in the profits. The defendant Onderdonk admits that the complainant called upon him and conversed upon the subject of the construction of the reservoir, but he denies that he was induced to enter into the business or participate in the contract by the representations of the complainant.

The questions to be decided are: First. What, if any, agreement was made between the complainant and the defendant McDonald? Second. Should the court find that McDonald agreed to pay the complainant a percentage of the profits of the enterprise is it a contract that can be enforced in equity? Third. Is the failure to allege and prove that the amount in controversy exceeds $2,000 fatal to the jurisdiction?

The court has no difficulty in reaching the conclusion that the complainant rendered services for the defendant McDonald at his request which were valuable and for which he should pay. In order to test the question of jurisdiction let it be assumed that the court finds that the defendant agreed to pay the complainant for his efforts in inducing Onderdonk to enter upon the work, 10 per cent. of the profits of the aqueduct contract. What then? Is the interposition of a court of equity necessary in order that this finding of fact shall be made? It is thought not and yet what more can the court do? A judgment merely announcing that such an agreement exists would be unprecedented, a mere brutum fulmen. But at this time the court is powerless to do more. The complainant in his testimony, and counsel in the brief, disclaim all intention to seek affirmative relief against Onderdonk and Mills "and the case therefore stands, for all purposes of the decision, as if McDonald were the only defendant." No ground for equitable relief is alleged or proved. An accounting is not demanded and no facts are proved which at present will justify an accounting. There is no allegation or proof of fraud or mismanagement in the work or failure to keep proper books. It is not pretended that any profits have been made and divided or that any money available for profits has been alienated or wasted. It is not alleged that McDonald is irresponsible or that there will be any difficulty in recovering the amount due in case the complainant finally succeeds. In short, nothing appears in the record of which to predicate an injunction, an accounting, a discovery, a receiver, or any relief which a court of equity is organized to grant. As the controversy now stands a perfectly responsible person has, from the complainant's point of view, promised to pay him a percentage (say 10 per cent.) of the profits of an enterprise, now under way, as soon as the work is completed and the profits are ascertained. It is clear that equity has no occasion to meddle with a simple contract obligation of this kind. The bill contains no averment that the amount involved is over $2,000. It is said that this defect may be cured

by an amendment conforming the pleading to the proof, but one serious obstacle is that the proof is as silent as the bill as to the amount of the complainant's claim. Nowhere does it appear that the requisite amount is involved. Vance v. W. A. Vandercock Co., 170 U. S. 468, 18 Sup. Ct. 645, 42 L. Ed. 1111; Transfer Co. v. Pendergrass, 16 C. C. A. 585, 70 Fed. 1. However, as an amendment in this respect will not cure the other defects pointed out, not only in the bill but in the proof, it is unnecessary to decide whether an amendment should be granted. The difficulty is that in the present status of the case the court cannot grant any relief whatever, much less any equitable relief. In these circumstances it would seem the duty of the court, sua sponte, to dismiss the bill. Lewis v. Cocks, 23 Wall. 466, 23 L. Ed. 70; Act March 3, 1875, c. 137, § 5. Even were it possible to amend the bill generally so as to state a case of equitable cognizance it would be an amendment so radical that it could only be made upon terms that would offer no advantages over the commencement of a new suit. It follows that the bill must be dismissed with costs, but without prejudice to any action which the complainant may bring in the future.